Charles B. SPLUNGE, Petitioner,

v.

Al C. PARKE, Respondent.

No. 3:95–cv–0688 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

May 28, 1996.

Charles B. Splunge, Michigan City, IN, Pro Se.

Christopher L. Lafuse, Indiana Attorney General, Indiana Government Center South, Indianapolis, IN, for Respondent.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On August 17, 1995, petitioner, Charles B. Splunge ("Splunge"), filed the present peti-

tion for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in this court, challenging a conviction imposed by the State of Indiana. Splunge is currently incarcerated at the Indiana State Prison in Michigan City, Indiana, and filed his petition *pro se.*

## I. FACTS AND PROCEDURAL HISTORY

In April 1986, Splunge entered into an agreement with Ms. Tara Fox ("Fox") whereby he and Fox would search for a person to rob and then steal that person's automobile. After searching for a potential victim, Splunge decided upon Mr. Kenneth Wallace ("Wallace"), who at the time was a customer inside the Apollo Liquor Store in Evansville, Indiana. As Wallace exited the liquor store, Splunge and Fox approached Wallace and asked him for a ride. Wallace agreed, and Splunge and Fox provided him with an address where they wished to go. When Wallace arrived at the destination, Fox pulled a handgun to effectuate the intended robbery. The gun discharged and, in the ensuing excitement, Fox fired a second shot. Both gunshots struck Wallace, fatally wounding him in the hip and abdomen. After the shots were fired, Splunge pushed Wallace from the vehicle, leaving Wallace lie on the pavement of the intersection as he and Fox sped away.

Several persons were present at the intersection and observed the activity. One of the witnesses, Mr. Louis Moschener, was in a vehicle directly behind Wallace's automobile a the intersection. When Mr. Moschener observed Splunge and Fox speed away after pushing Wallace from the automobile, he followed them. After a short chase, Splunge attempted to negotiate a turn at high speed and crashed into a house. Both Splunge and Fox fled the scene. However, Fox was captured a short time later and Splunge was taken into custody the next day.[1]

On April 14, 1986, the State of Indiana charged Splunge by information with murder and robbery. On August 14, 1986, after a trial by jury in the Superior Court of Vanderburgh County, Splunge was found guilty of both murder and robbery as a class A

felony. As a result, on September 15, 1986, Judge Thomas Lockyear sentenced Splunge to sixty (60) years in prison. Splunge appealed his convictions directly to the Supreme Court of Indiana. Consequently, on November 28, 1988, the Supreme Court affirmed the jury's verdict and Judge Lockyear's sentence. *See Splunge v. State,* 526 N.E.2d 977 (Ind.1988), *cert. denied,* 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1028 (1989).

Splunge filed his first petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in this court on September 11, 1990. In that petition, Splunge challenged the state prosecutor's use of preemptory challenges at trial. In a memorandum and order dated February 14, 1991, this court held that the state prosecutor had exercised one preemptory challenge on the basis of race in violation of the Fourteenth Amendment. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Consequently, this court granted Splunge's petition for writ of *habeas corpus* under § 2254, a decision which was affirmed by the United States Court of Appeals for the Seventh Circuit in *Splunge v. Clark,* 960 F.2d 705 (7th Cir.1992).

In January 1993, Splunge received a new trial in the Vanderburgh County Superior Court. However, the second jury could not reach a verdict. As a result, a third trial commenced in March 1993. On April 1, 1993, a third jury convicted Splunge of murder and robbery as a class A felony. As a result, on April 23, 1993, Judge Lockyear again sentenced Splunge to sixty (60) years in prison. Splunge appealed these convictions to the Supreme Court of Indiana, which on October 17, 1994, affirmed the third jury's verdict and Judge Lockyear's sentence. *See Splunge v. State,* 641 N.E.2d 628 (Ind.1994).

## II. ARGUMENTS

On September 7, 1995, Splunge filed the petition for writ of *habeas corpus* now before this court. In his petition, Splunge challenges the constitutionality of his April 1993 convictions, specifically raising several claims

---

1. For a more detailed statement of the facts, see the Supreme Court of Indiana's decision on Mr. Splunge's appeal, *Splunge v. State,* 641 N.E.2d 628, 629–30 (Ind.1994).

under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. First, Splunge claims that several statements made by the state prosecutor during closing arguments of the third trial amounted to prosecutorial misconduct and violated his right to a fair trial. Second, he claims that he was denied a fair trial when the state prosecutor commented on his right not to testify at trial in closing arguments. Third, he contends that the state trial court also denied him a fair trial when defense counsel was allegedly denied the opportunity to cross-examine Tara Fox, a witness for the State, concerning the possibility that her sentence would be modified in exchange for her testimony against Splunge. Fourth, he contends that the State denied him a fair trial by improperly introducing mug shots into evidence when his identity was not at issue. Finally, he claims that the state trial court violated his right to a fair trial when he was denied the opportunity to impeach the testimony of various state witnesses through the use of prior inconsistent statements.

On December 14, 1995, the respondent filed his return to order to show cause, demonstrating the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). Further, the respondent's have filed the state court record, which has been carefully examined by the court under the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

In the return, the respondent raises the following arguments. First, the respondent argues that the state prosecutor did not commit any acts of prosecutorial misconduct during the third trial. Second, the respondent contends that the state prosecutor's comment on Splunge's decision not to testify on his own behalf did not violate Splunge's Fifth Amendment rights. Third, the respondent argues that the remaining grounds raised by the petitioner do not allow for the issuance of a writ of *habeas corpus* because the claims are based solely on issues of state law and do not rise to the level of a denial of fundamental fairness or a specific constitutional right. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). Further,

the respondent argues that these state law claims do not even amount to trial errors on their merits. Thus, the respondent requests that the court deny Mr. Splunge's request for *habeas corpus* relief in this case.

The petitioner filed his traverse to respondent's return to order to show cause on April 24, 1996. In his traverse, Splunge responds to the arguments raised by the respondent, and also restates and expands upon the arguments raised in his petition.

### III. BACKGROUND

A claim under 28 U.S.C. § 2254 requires the federal *habeas* court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791.

■ Following *Jackson, supra,* there is an increasingly long line of cases in this circuit,

including the very recent decision in *Brumley v. Detella,* 83 F.3d 856 (7th Cir.1996), which suggest that the facts found by the highest court of a state are presumed to be correct. *See also, Milone v. Camp,* 22 F.3d 693, 697 n. 2 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995); *Cuppett v. Duckworth,* 8 F.3d 1132, 1141 (7th Cir.1993) (en banc), *cert. denied,* 510 U.S. 1180, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994); *Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings 'lacked even fair support in the record.'" *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983); *see also Mills v. Jordan,* 979 F.2d 1273, 1279 (7th Cir.1992). Thus, the court now acknowledges that the explicit findings of fact in Justice Givan's opinion for the Supreme Court of Indiana in *Splunge v. State,* 641 N.E.2d 628 (Ind.1994), are certainly entitled to a presumption of correctness under § 2254(d).

■ It also must be understood that this court does not sit to correct any errors of state law. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and *Kraushaar v. Flanigan,* 45 F.3d 1040 (7th Cir.1995). This court also does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the Constitution, treaties and laws of the United States. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

## IV. PROSECUTORIAL MISCONDUCT

The first ground for review raised by Splunge in his petition is that he was the victim of several instances of prosecutorial misconduct during his third trial. Specifically, Splunge raises seven separate instances in which he claims the state prosecutor violated his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments. First, Splunge claims that during the prosecutor's closing arguments, the state prosecutor improperly commented on his decision to remain silent and not testify on his own behalf at trial. Second, he claims that the prosecutor made an improper appeal to the jury's sympathy during his closing arguments. Third, he contends that the prosecutor improperly argued that defense counsel did not want the jury to know the truth during closing arguments. Fourth, he claims that the prosecutor improperly suggested that defense counsel had admitted the petitioner was a thief and that the prosecutor had misstated the law to the jury. Fifth, the petitioner claims that the prosecutor improperly characterized and distorted the evidence during closing arguments. Sixth, Splunge claims that the prosecutor made improper comments regarding the defense's failure to prove a matter in issue, which prevented evidence from being admitted at trial. Finally, Splunge claims that the prosecutor's closing argument, when viewed in its totality, placed him in a position of grave peril and, thus, denied him a fair trial.

■ This court has published several opinions dealing with a variety of issues under the banner of prosecutorial misconduct. *See e.g., Calhoun v. Farley,* 913 F.Supp. 1218 (N.D.Ind.1995); *Smith v. Farley,* 873 F.Supp. 1199 (N.D.Ind.1994); *Burris v. Farley,* 845 F.Supp. 636 (N.D.Ind.1994). In evaluating claims of prosecutorial misconduct, the court must consider the prosecutor's conduct in the context of the whole trial. *United States v. Dominguez,* 835 F.2d 694, 699 (7th Cir.1987); *United States v. Holt,* 817 F.2d 1264, 1275 (7th Cir.1987). In order for a petitioner to succeed on a claim of prosecutorial misconduct, he "must demonstrate that 'the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Reed,* 2 F.3d 1441, 1450 (7th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 898, 127 L.Ed.2d 90 (1994) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)). Thus, the fact that a prosecutor's remarks to a jury may have been "undesirable or even universally condemned" does not mean that a con-

stitutional violation has occurred. *Darden,* 477 U.S. at 181, 106 S.Ct. at 2471. The court must first examine each statement at issue in isolation to determine whether it was proper—if it was proper, the analysis ends. *United States v. Butler,* 71 F.3d 243, 254 (7th Cir.1995). However, if the court determines that the disputed statement was improper, the court must then analyze the remark in light of the entire record to determine if the petitioner was deprived of a fair trial. *United States v. Goodapple,* 958 F.2d 1402, 1405 (7th Cir.1992). "To carry this burden, [the petitioner] must show that it is at least likely that the misconduct complained of affected the outcome of the trial—i.e., caused the jury to reach a verdict of guilty when otherwise it might have reached a verdict of not guilty." *United States ex rel. Shaw v. De Robertis,* 755 F.2d 1279, 1281, n. 1 (7th Cir.1985).

█ The court must view the disputed statement with reference to the totality of the record for, although an improper comment when viewed in isolation may seem prejudicial, the same statement may actually be harmless error when viewed in context of the entire trial. *United States v. Brown,* 688 F.2d 1112, 1118 (7th Cir.1982). In order to make such a determination, the court must balance several factors:

> (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice was ameliorated by the court's instructions to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the sufficiency of the evidence supporting the conviction.

*United States v. Pirovolos,* 844 F.2d 415, 425 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988) (citing *Darden,* 477 U.S. at 182, 106 S.Ct. at 2472 (1986)); *see also United States v. Velez,* 46 F.3d 688, 691 (7th Cir.1995); *United States v. Osuorji,* 32 F.3d 1186, 1191 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 919, 130

L.Ed.2d 799 (1995); and *United States v. Badger,* 983 F.2d 1443, 1450 (7th Cir.1993).

█ These five factors are not to be applied in a rigid manner, but rather each factor is to carry varying weight depending on the facts of each case. *Rodriguez v. Peters,* 63 F.3d 546, 558 (7th Cir.1995); *United States v. Badger,* 983 F.2d 1443, 1450 (7th Cir.), *cert. denied,* 508 U.S. 928, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993). The most important factor to be considered in determining whether the closing statement violated the petitioner's rights is the sufficiency of the evidence supporting the convictions, for "strong evidence of guilt eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." *United States v. Gonzalez,* 933 F.2d 417, 431–32 (7th Cir.1991).

Because the petitioner's first three claims of prosecutorial misconduct, if meritorious, are the source of greatest concern, the court will now address those claims individually.

### A. COMMENT ON SPLUNGE'S DECISION NOT TO TESTIFY

█ Splunge's first claim of prosecutorial misconduct is intertwined with Splunge's second ground for review raised in the petition—that the prosecutor's comments on his decision to remain silent at trial violated his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments. The following statement by the state prosecutor is at issue:

> Think about the victim. The victim in this case has the right to remain silent, too. And he will for all eternity, thanks to Mr. Splunge. He had rights, too . . .

Tr. 772.

The petitioner argues that this statement is a direct reference to his decision to remain silent at trial.[2] The respondent, however, argues that this statement was merely an

---

**2.** Mr. Splunge argues that the Supreme Court of Indiana found the prosecutor's statement to be a direct reference to his decision not to testify at trial. However, a review of Justice Givan's opinion in *Splunge v. State,* 641 N.E.2d 628 (Ind. 1994), establishes that the Court did not find the statement to be a direct reference to Splunge's

decision. In his opinion, Justice Givan wrote, "There can be little doubt that the prosecutor in this case was attempting to remind the jury that appellant had not testified. However, he did not make a direct reference to such and did not dwell on the matter." *Id.* at 630.

indirect reference to the petitioner's decision not to testify and, therefore, the statement did not violate the petitioner's Fifth Amendment rights.

It is well established that under the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, both the court and the prosecution are prohibited from commenting on a defendant's failure to testify and inviting the jury to infer guilt from that failure. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Whether a defendant's Fifth Amendment rights have been violated by such a comment depends upon the nature and circumstances in which the comment is made. A prosecutor's direct comment on a defendant's failure to testify is a clear violation of the Fifth Amendment. *Butler*, 71 F.3d at 254. However, the Seventh Circuit has held that if the comment is indirect, the Fifth Amendment will be violated only if the "comment causes the jury to necessarily and naturally draw the inference of the defendant's guilt from his failure to testify." *United States v. Goodapple*, 958 F.2d 1402, 1405 (7th Cir.1992). It seems to this court that however well-intended the prosecutor's statement may have been, he may well have stepped over the line in this instance. However, it is the general view of this court in examining the record that the statement at issue was only an indirect comment on the defendant's decision not to testify and, therefore, not a *per se* violation of the Fifth Amendment.

Upon a review of the record, the court does not find that the state prosecutor's statement denied Splunge his right to a fair trial or infected the trial with unfairness. Analyzing the statement under the *Pirovolos* balancing test, *supra*, the court finds that, although the prosecutor's statement was at best ill-advised and unwarranted (and not made at the invitation of the defense), the statement was only an indirect reference to the petitioner's decision to remain silent—a point that the prosecutor did not dwell upon during his closing argument. Further, the judge explicitly instructed the members of the jury that the attorneys' closing arguments were not evidence, that they were to base their verdict solely on the evidence received and not on the closing arguments, and that the closing arguments were given only to assist them in evaluating the evidence and in arriving at correct conclusions based upon the evidence presented. Tr. 797.

The question that remains, and the most important factor to be considered, is whether the evidence supporting the conviction was sufficient in light of the prosecutor's unwarranted statement. *See Gonzalez, supra.* On this issue, the question now confronting the court is similar in context to the issue of harmless error, where the standard is whether the error, in this case the prosecutor's statement indirectly referring to Splunge's decision to remain silent at trial, had a "substantial and injurious effect or influence in the jury's verdict." *O'Neal v. McAninch*, —— U.S. ——, ——, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1992)). Thus, under such an analysis, habeas petitioners are entitled to habeas relief based upon a trial error only if the error resulted in actual prejudice. *Brecht*, 507 U.S. at 637, 113 S.Ct. at 1721–22.[3]

Upon a careful review of the record, the court finds that the State presented overwhelming evidence to establish Splunge's guilt. At trial, Tara Fox, Splunge's accomplice, testified for the State. Her testimony can be summarized as follows: that she and Splunge had discussed the idea of "getting money" by robbing someone; that she and Splunge indeed did approach Mr. Wallace, asking him for a ride; that Wallace agreed to give them a ride; that upon reaching their destination, she pulled a gun on Wallace; that she shot Wallace twice (though she testified that the gun was fired accidentally); and that Splunge threw Wallace out of the car before they sped away from the scene in

**3.** Though the court acknowledges the similarity in context between the determination of the sufficiency of the evidence in relation to the issue of prosecutorial misconduct and the standard of review on the issue of harmless error, the court does not intend to imply that the prosecutor's statement amounts to a Fifth Amendment violation in this case.

Wallace's automobile. Tr. 572, 575–76, 581–84.

In addition to the testimony of Splunge's accomplice, the State elicited the following relevant testimony during the third trial: (1) the testimony of Deloyd Greer, who observed a man fitting Splunge's description exiting Wallace's car immediately after the shooting, Tr. 163–64; (2) the testimony of Louis Moschener, who observed Splunge pushing Wallace out of the car, Tr. 209; and (3) the testimony of Robert Campbell and Texianna Givens, who testified that they had seen Splunge carrying a gun on the day of the murder, Tr. 253–54, 271–72. This court views such evidence as more than sufficient to support Splunge's convictions for murder and robbery as a class A felony. Further, the court finds that, because the statement at issue could not have had a substantial and injurious effect or influence on the jury's decision when placed against such overwhelming evidence of guilt, the prosecutor's statement did not have a prejudicial effect on the petitioner's trial.

■■■ The court acknowledges that under *Brecht* and *O'Neal, supra,* the burden which the state must prove to succeed on a defense of harmless error is great. *See Dudley v. Duckworth,* 854 F.2d 967 (7th Cir. 1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). However, in the present case, the court reiterates that no constitutional error exists on this claim—the prosecutor's statement made only an indirect reference to Splunge's decision not to testify and the statement did not have a prejudicial effect on the trial. As for Splunge's broader claim that the prosecutor's statement at issue denied him a fair trial under the Fourteenth Amendment, the court looks to the Seventh Circuit's decision in *Thompkins v. Cohen,* 965 F.2d 330 (7th Cir.1992). In *Thompkins,* a panel of that court held that a general harmless error analysis does not come into play when the only federal right at issue is the general right to a fair trial—instead, to prevail on such a ground, a petitioner must "show that the errors of which he complains probably caused a miscarriage of justice, that is, the conviction of an innocent person." *Id.* at 333–34. Upon review of the evidence pre-

sented at trial, this court cannot find that the prosecutor's statement caused a miscarriage of justice, given the overwhelming nature of the evidence supporting Splunge's guilt.

Therefore, the court now holds that the petitioner's claim that the prosecutor's statement in closing arguments which indirectly referred to his decision to remain silent at trial did not amount to an instance of prosecutorial misconduct nor a violation of the petitioner's right to a fair trial, and thus, such claim is dismissed.

### B. ATTEMPT TO APPEAL TO JURY'S SYMPATHY

■■ The second claim for prosecutorial misconduct involves another statement made by the prosecutor in his final closing argument. The petitioner, in this instance, claims that the prosecutor improperly appealed to the jury's sympathy in response to remarks made by defense counsel. In closing arguments, defense counsel stated to the jury:

> And no matter what you do today, I'll be going home this evening. No matter what you do today, Mr. D'Amour will be going home this evening. And no matter what you do, you'll be going home this evening. And this case is important to you. You've given it your attention and your time, and I know you're going to do your best. As time goes on, your memory of this case is going to fade. Eventually, you may forget this case, so might the Prosecutor, so might Judge Lockyear, so might myself. But, if you decide this case against Charles Splunge, he'll live with this case for the rest of your life. And his mother and his family will live with your decision for the rest of their lives....

Tr. 769–70. It is the prosecutor's response to defense counsel's above statement to which the petitioner takes offense. The prosecutor stated in his rebuttal:

> You're right, Mr. Shaw, we'll all go home tonight. We'll go about our lives and eventually we'll forget about this. Maybe, Charles will go home tonight. Maybe he won't. Kenny Wallace isn't going to go home. Kenny Wallace hasn't gone home for six years. And he's not comin' home

anytime soon. So, think about Kenny Wallace. . . .

Tr. at 771. Splunge claims that when the above statement is viewed in relation to the other errors he asserts, it becomes clear that the prosecutor acted with "an evil eye and uneven hand" to convict Splunge in the third trial.[4] The respondent argues that the prosecutor's statement was appropriate, in that it was merely an attempt by the prosecutor to focus the jury's attention on the crimes that Splunge had committed.

Again, the court must analyze the prosecutor's statement under the *Pirovolos* balancing test, *supra.* Upon review of the statement, it does not appear that the comment was on its face violative of any constitutional right and, thus, was not improper. The statement was made to rebut the defense's own comment made during its closing argument. Thus, the prosecutor's comment was "invited" by the defense. *See United States v. Marshall,* 75 F.3d 1097, 1108 (7th Cir. 1996); *United States v. Johnson–Dix,* 54 F.3d 1295, 1305 (7th Cir.1995). Although the defense did not have an opportunity to rebut the statement, the defense did object to the statement when it was made. However, the trial judge overruled the objection. Tr. 771–72. Additionally, as was discussed *supra,* the trial court judge did adequately instruct the jury as to the weight to be given to closing arguments. Further, the court finds that the State did present overwhelming evidence of Splunge's guilt at trial. Therefore, the court finds that the prosecutor's statement did not actually prejudice the petitioner's right to a fair trial because the statement could not have had a substantial and injurious effect or influence on the jury's decision when viewed in relation to the overwhelming evidence of his guilt. Thus, this claim must fail.

## C. ATTEMPT TO IMPUGN DEFENSE COUNSEL

■ Mr. Splunge next attacks another statement made by the state prosecutor during closing arguments. He contends that the state prosecutor made statements in his final closing argument which were intended to impugn the defense. The following remarks made during the prosecutor's closing argument are relevant to the petitioner's claim:

> Mr. D'Amour: The bottom line is, ladies and gentleman of the jury, they don't want you to know what the truth is. Mr. Shaw does not want you to know. Mr. Shaw does not want me to complete my final argument. He wants to disrupt this as much as possible, so you will not know what the truth is, so that you will be confused. Please don't allow that to be successful . . .

> Mr. Shaw: Your Honor, I would request that the Court admonish Mr. . . .

> The Court: This is final argument.

> Mr. Shaw: . . . Mr. D'Amour . . .

> The Court: Overruled.

> Mr. Shaw: . . . from engaging in personal vituperation.

> The Court: Overruled.

Tr. 776–77.

The petitioner argues not only that the prosecutor's remarks were improper and prejudicial, but that the trial court completely failed to exercise its power and duty to admonish the prosecutor. The respondent argues that the prosecutor's statements were made during a particularly contentious rebuttal argument and that, even though the prosecutor's statement was arguably improper, the State's presentation of overwhelming evidence of Splunge's guilt outweighs any prejudice that may have resulted from the statement.

Again, the court must weigh the prejudicial effect of the prosecutor's statement under *Pirovolos, supra.* The court views this statement in much the same light as it does the prosecutor's comment which made an indirect reference to the petitioner's decision not to testify at trial—the court agrees with the petitioner that the prosecutor's statement was improper. However, the court believes that any impropriety, when viewed in light of Judge Lockyear's instructions to the jury and when weighed against the overwhelming

---

**4.** See Petitioner's Memorandum of Law in Support of Traverse to Respondent's Return to Order to Show Cause, at 14.

evidence of guilt, cannot amount to a constitutional violation under the *Pirovolos* balancing test. Thus, under the analysis of *Brecht* and *O'Neal,* the court finds that the prosecutor's statement, though ill-advised and unwarranted, did not work a substantial and injurious effect or influence on the jury's verdict and did not render Splunge's trial unfair. Therefore, the court also dismisses this claim.

### D. OTHER ALLEGATIONS OF PROSECUTORIAL MISCONDUCT

In addition to the three statements already discussed, the petitioner has raised three other instances that allegedly support his claim of prosecutorial misconduct. Splunge first claims that the prosecutor improperly noted in closing arguments that defense counsel had conceded the issue of whether the petitioner had committed theft. See Tr. 726–732, 739, 774–775. Second, Splunge contends that the prosecutor misstated evidence to the jury during closing arguments. See Tr. 772–774. Third, the petitioner claims that the prosecutor, when commenting on the testimony of witnesses Jennie Upchurch and Willie Alexander, improperly argued that the word "hustle" meant "rob." Tr. 785–786. Lastly, the petitioner has also made a broad claim that the cumulative effect of the prosecutor's "errors" denied him a fair trial.

These three additional statements challenged by Splunge must also be analyzed under the *Pirovolos* balancing test and the harmless error standard of *Brecht* and *O'Neal.* Upon reviewing these statements, the court finds that these statements were not improper, and thus do not constitute instances of prosecutorial misconduct. Further, it must be repeated that the State presented overwhelming evidence of the petitioner's guilt at trial. Therefore, under the analysis of *Brecht* and *O'Neal,* the court finds that these statements did not work a substantial and injurious effect or influence on the jury's verdict and, thus, did not actually prejudice Splunge's right to a fair trial. Accordingly, the court dismisses these claims as well.

In his final argument on the issue of prosecutorial misconduct, Splunge claims that the cumulative effect of the prosecutor's alleged errors was prejudicial and denied him a fair trial. In contrast, the respondent contends that none of the six alleged instances of prosecutorial misconduct, on their own, violated Splunge's constitutional rights. Further, the respondent argues that even if the court should find one or more of the prosecutor's statements to be improper, the cumulative effect of these statements did not deny Splunge a fair trial due to the overwhelming evidence of Splunge's guilt presented by the State at trial.

This issue presents a close, difficult and troubling question. As noted above, the court finds that not one of the six statements challenged by Splunge, on its own, constitutes an error so serious as to outweigh the overwhelming evidence of guilt presented by the State at trial. The question now before the court is whether the overwhelming evidence of guilt presented by the State at trial outweighs the cumulative effect of the prosecutor's improper statements.

The correct boundaries of prosecutorial advocacy were first set out by the Supreme Court of the United States in *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In *Berger,* Justice Sutherland, writing for a unanimous Court, stated that it is the prosecutor's duty to prosecute a case with earnestness and vigor, and while the prosecutor may strike hard blows, he is not at liberty to strike foul ones. *Id.* at 88, 55 S.Ct. at 633. Public prosecution carries with it many difficult burdens, the least of which is to avoid excessive conduct which may turn out to be counter-productive to the State's search for justice. *See Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

In this case, it is undisputed that the state prosecutor made at least two statements that were improper and unwarranted during closing arguments. However, as the Seventh Circuit held in *Alvarez v. McGinnis,* 4 F.3d 531 (7th Cir.1993), "even in cases of extreme misconduct, a reviewing court examines the entire record to determine whether [the peti-

tioner] received a fair trial." *Id.* at 533; *see also United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir.), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 84 (1986). To violate a petitioner's constitutional due process rights, prosecutorial misconduct must poison the entire atmosphere of the trial. *Alvarez,* 4 F.3d at 533; *United States v. Pirovolos,* 844 F.2d 415, 425 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). A criminal conviction is not to be lightly overturned on the basis of a prosecutor's statements to the jury where the proceeding at issue was fair when viewed in its totality. *United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

The court has reviewed the prosecutor's statements at issue in relation to the entire record filed by the respondent in this case. Though the court finds that two of the prosecutor's statements, one relating to the petitioner's decision not to testify and other to the prosecutor's attempt to impugn defense counsel, fall within the realm of statements classified by then Chief Judge Bauer in *United States v. Ashman,* 979 F.2d 469 (7th Cir. 1992), as comments that were "better left unsaid," the plain fact is that the third trial, when viewed in its entirety, was a fair proceeding. All of the statements that Splunge challenges were made by the prosecutor during his closing arguments. However, the jury was properly instructed by Judge Lockyear to base its decision only upon the evidence presented, and it was instructed that the attorneys' opening and closing arguments were not to be considered evidence. Further, as this court analyzed above, the evidence presented at trial overwhelmingly supports the jury's finding of guilt on the charges of murder and robbery as a class A felony. As in *Bracy v. Gramley,* 81 F.3d 684 (7th Cir.1996), a recent decision carefully analyzed by Chief Judge Posner, the redeeming element in this record is the overwhelming evidence of guilt—a question which this court finds not to be in doubt. Thus, even though the prosecutor did make improper statements during his closing arguments, these statements did not have a substantial and injurious effect or influence on the jury's verdict and did not unduly prejudice the petitioner's right to a fair trial. *O'Neal,* ——

U.S. at ——, 115 S.Ct. at 994; *Brecht,* 507 U.S. at 637, 113 S.Ct. at 1721–22. Therefore, the court now dismisses all claims of prosecutorial misconduct in this case.

## V. RIGHT TO CONFRONT STATE'S WITNESS

The court will next address Mr. Splunge's contention that the state trial court violated his right to a fair trial. Specifically, the petitioner claims that the state trial court denied him the opportunity to cross-examine his accomplice, Tara Fox, concerning the possible modification of her sentence in return for her testimony. The respondent argues that this claim raises only a state law issue and does not provide a basis for federal *habeas corpus* relief. Further, the respondent argues that Splunge was given the opportunity to question Fox on the issue of whether the State had offered her any inducements in exchange for her testimony. Accordingly, the court, interprets Splunge as raising a claim under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused to "be confronted with the witnesses against him." U.S. CONST.AMEND. VI. The right of confrontation means more for a petitioner than the right to confront a witness physically. *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* However, the right to cross-examine an adverse witness is not absolute: the Constitution guarantees only an opportunity for a thorough and effective cross-examination—not cross-examination that is effective "in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam).

In order to establish a violation of the Confrontation Clause, the defendant need not show prejudice with respect to the trial as a whole; rather, the focus is on individual witnesses. *United States v. Sas-*

*son,* 62 F.3d 874, 882 (7th Cir.1995). As the Supreme Court of the United States instructed in *Van Arsdall,* "[t]he focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1435. Typically, the right to confront one's accusers is satisfied if the defense counsel is granted wide latitude at trial to question the State's witnesses. *Pennsylvania v. Ritchie,* 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987).

■ Mr. Splunge claims that the state trial court did not allow defense counsel to question his accomplice, Tara Fox, on the issue of whether her testimony for the State was given in exchange for a modification of her sixty-year prison sentence. Upon a review of the record, the court finds that defense counsel was given the opportunity to question Fox on whether her sentence could be modified. Tr. 613–14. The petitioner takes issue with the state trial court judge's decision not to allow defense counsel the opportunity to question Fox on possibility that her sentence could be modified in the future in exchange for her testimony. Judge Lockyear refused to allow defense counsel to question Fox on that subject, finding that such testimony would be speculative and irrelevant. Tr. 617–19.

■ The Supreme Court of the United States held in *Van Arsdall, supra,* that so long as the defendant is given an opportunity for effective cross-examination, the trial court retains wide latitude to impose reasonable limits on the scope and extent of cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or *only marginally relevant." Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435 (emphasis added). Based upon the holding in *Van Arsdall,* this court finds that Judge Lockyear's decision to limit the extent of questioning on Fox's sentence was justified under the circumstances. In addition, the court finds Fox's admission during direct examination that the State had not made her any promises concerning her testimony during the trial to be very compel-

ling on this issue. Tr. 593. Based upon the entire testimony of Fox and Judge Lockyear's determination that any testimony on the possible future modification of Fox's sentence would be irrelevant, the court now finds that the petitioner cannot establish that he was prejudiced by the judge's decision not to allow the defense to pursue the line of questioning at issue. Therefore, the court now finds that Splunge's Sixth Amendment rights under the Confrontation Clause were not violated by the state trial court in this case, and such claim is now dismissed.

## VI. CLAIMS UNDER STATE LAW

■ Mr. Splunge has also raised two other grounds for review in this case. Splunge claims that the state trial court violated his right to receive a fair trial by improperly introducing his mug shots into evidence even though his identity was not at issue and by denying him the opportunity to impeach the testimony of state witnesses through the use of prior inconsistent statements.

The respondent argues that each of these claims raises only a violation of state law and, thus, cannot be addressed in a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. The respondent is correct in arguing that this court does not sit to correct any errors of state law, does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and *Kraushaar v. Flanigan,* 45 F.3d 1040 (7th Cir.1995).

The court agrees with the respondent that these claims, challenging the state trial court's rulings on the admission of evidence, are issues which turn solely on the interpretation of state law. The Seventh Circuit has held that state evidentiary rulings rarely should be the basis for granting *habeas* relief since the admission of evidence is a matter within the broad discretion of the trial judge. *Cramer v. Fahner,* 683 F.2d 1376, 1385 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Federal review of state evidentiary rulings under § 2254 is limited to where error results in a denial of a specific constitutional right or is of such mag-

nitude as to result in a denial of fundamental fairness. *United States ex rel. Clark v. Fike,* 538 F.2d 750, 757 (7th Cir.1976). When a petitioner claims that an error violated his general right to a fair trial, more than a showing of mere prejudice must be required; the petitioner must demonstrate that any resulting prejudice amounted to the likelihood that an innocent person was convicted. *Thompkins,* 965 F.2d at 333.

In his petition and traverse, Splunge claims that these evidentiary rulings were prejudicial and, thus, violate his right to a fair trial. However, Splunge has not provided the court with any evidence of prejudice or error on either of these claims. Further, under the holding in *Thompkins, supra,* even if Splunge had presented evidence which was sufficient to establish prejudice, his claim that the evidentiary errors denied him a fair trial is trumped by the overwhelming evidence of his guilt presented by the State at trial. Therefore, the court must dismiss these claims under the mandates of *Estelle v. McGuire, supra.*

### VII.   CONCLUSION

In conclusion, based on this court's review of the entire record, it does not appear that the petitioner has raised grounds which warrant federal *habeas corpus* relief in this case. Therefore, the court now **DENIES** Mr. Splunge's petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, and this case is now **DISMISSED.**

**IT IS SO ORDERED.**